## Case No. 8,495.

### LONSDALE v. BROWN.

[See Case No. 8,494.]

## Case No. 8,496.

### LONSDALE CO. v. MOIES.

[1 Brunner, Col. Cas. 655; [1] 21 Law Rep. 658.]

Circuit Court, D. Rhode Island. June, 1857.

DEED — PROOF OF EXECUTION BY SUBSCRIBING WITNESS — EQUITY — EFFECT OF REGISTERED DEED WITH NOTICE OF PRIOR UNREGISTERED CONVEYANCE—INJUNCTION—NOTICE—OPEN AND NOTORIOUS POSSESSION— EASEMENT — RIGHT TO TAKE WATER — CANAL — PUBLIC USE — WATER RIGHTS.

1. A deed which is more than thirty years old at the time of the hearing, the grantor and one of the subscribing witnesses being dead, and the other testifying to her own signature as a witness, is sufficiently proved, though the witness can neither swear to the genuineness of the grantor's signature, nor the execution of the deed by him.

2. A court of equity has jurisdiction to postpone a registered deed taken with notice of a prior unregistered deed, and to enjoin an action at law based on the former deed against the grantee under the latter deed.

3. Visible possession and occupation by the grantee under an unregistered deed, known to the grantee under a registered deed, is sufficient, if not controlled by other circumstances, to warrant a court or jury in finding notice of the unregistered deed.

4. An incorporeal right to water may be granted in gross.

[Cited in Goodrich v. Burbank, 12 Allen, 462; Amidon v. Harris, 113 Mass. 64.]

5. A canal corporation may permit water to be drawn through its canal for mill purposes, if neither the public use nor any private right is thereby injured.

[Cited in Lonsdale Co. v. Moies, Case No. 8,-497.]

[Bill by the Lonsdale Company against Miles G. Moies for a title to certain water rights.]

CURTIS, Circuit Justice. This is a suit in equity, wherein the complainants assert their title to certain water rights, and pray that their title may be quieted as against the respondent, and especially as against a suit at law instituted by him, and now pending in this court. Both parties claim title under one Simon Whipple; the complainants through certain conveyances alleged to have been made by him, and the respondent through a conveyance made by Simmons and wife, in her right as the daughter and heir of Simon Whipple, after his decease, to Charles Moies, and by him to the respondent. Among the deeds alleged to have been made by Simon Whipple, and under which the complainant claims, is one in the following words and figures:

"To All People to Whom These Presents shall Come. I, Simon Whipple, of Smithfield, in the county of Providence, state of Rhode Island, send greeting. Know ye that I, the said Simon, for and in consideration of one dollar, in hand before the ensealing hereof, well and truly paid by Wilbur Kelly, of North Providence, state and county aforesaid, the receipt whereof I hereby acknowl-

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

edge, and am therewith fully satisfied and paid, and thereof do acquit and discharge him, the said Kelly, his heirs and assigns forever, by these presents. Have given, granted, sold, conveyed, confirmed, and by these presents do give, grant, convey, and confirm unto him, the said Kelly, his heirs and assigns forever, all my right, title, and interest in and to the waters of the Blackstone River, with the further right and privilege to him, the said Kelly, his heirs and assigns forever, to take, divert, convey, and use the said waters on, over, through, or by my land, through the Blackstone Canal, wherein situated, for any purpose whatever. To have and to hold the said granted and bargained premises, with all the privilege thereunto belonging, or appertaining to him, the said Kelly, his heirs and assigns forever; and I, the said Simon, do covenant with the said Kelly, that I am lawfully seized and possessed of the same, and have full right and power to convey the same; and that the said Kelly, his heirs and assigns, shall and may, from time to time, and all times hereafter, by virtue of these presents, lawfully hold the said water and the use thereof. Provided, however, the said Simon reserves to himself, his heirs and assigns forever, the right of taking and drawing water, either from the mill pond by a trench, or through the Blackstone Canal banks, conformable to their agreement made with me the 16th day of March, 1826, whenever the water is running to waste over said dam or flashboards thereof, for the purpose of watering my intervale land south of said Kelly's factory, on the west side of the Blackstone river. In testimony whereof, I have set my hand and seal, this 31st day of March, A. D. 1826. Simon Whipple. (Seal.) In presence of (Memod. through the Blackstone Canal, first interlined.) (Signed.) Salah S. Whipple. (Signed.) Martha Hull.

"Providence, sc.—At Smithfield, August 30, 1826, at 8 o'clock p. m., the within deed was then received, and is recorded in the registry of deeds for said town, in Book No. 16, and page 337.

"Town Clerk's Office, Smithfield, December 2, 1845. I hereby certify that the aforegoing deed is recorded in Smithfield registry of deeds, in Book No. 15, page 337. Witness, (Signed.) Orin Wright, Town Clerk."

If this deed was executed by Simon Whipple, and is valid and operative as against the respondent, to convey all Whipple's rights to water which are now in controversy, and the complainants have acquired those rights from Wilber Kelly, they have the better title, and are entitled to such relief as a court of equity deems appropriate to the case. The execution of the deed by Simon Whipple is denied. One of the subscribing witnesses is shown to be deceased. The other, the daughter of the grantor, and the person under whom the respondent claims, testifies to the genuineness of her own signature, and that she placed it there as a witness; but what is somewhat strange, says she does not know her father's handwriting, and cannot say whether or not he executed the deed. But when this exhibit was produced at the hearing, and when for the first time it became necessary for the complainants to prove it (Gres. Eq. Ev. 188), the deed was more than thirty years old, and coming from the proper custody, and especially when accompanied by proof of enjoyment in conformity with it, was admissible in evidence without proof of its execution. A fortiori it is admissible after the memory of one of the subscribing witnesses has been exhausted, and the other is shown to be dead, and the relation of the living witness to the grantor, and the genuineness of her own signature, and the fact of her attestation, strongly tend to repel any idea of fraud or mistake, and to prove the execution of the deed by the grantor, and there is no evidence tending to create a doubt or suspicion concerning its genuineness. It is denied that the deed is operative as against the respondent, because, though recorded, it was not acknowledged. The statute of Rhode Island provides that "all bargains, sales, and other conveyances whatsoever, of any lands, etc., shall be void, unless they shall be acknowledged and recorded as above said; provided always, that the same between parties and their heirs shall nevertheless be valid and binding." It is a settled rule, both in England and America, that a court of equity will not suffer a subsequent grantee, by a registered deed, to hold an estate conveyed by a prior unregistered deed, of which he had notice at the time of his purchase. An attempt thus to acquire a title known to have been conveyed to another is an attempt to commit a fraud; and upon the ground of fraud equity interposes, and restrains the second grantee from availing himself of his covinous contrivance. And this without regard to the particular terms of the registry acts, whose purpose is fully answered when purchasers are protected from secret liens and conveyances. 4 Kent, Comm. 171; 1 Story, Eq. § 397. In Landes v. Brant, 10 How. [51 U. S.] 348, it was decided that open and notorious occupation by the first purchaser, when the second deed was taken, is in itself sufficient to warrant a jury or court in finding that the second purchaser had evidence before him of a character to put him on inquiry as to what title the possession was held under; and that the subsequent purchaser was bound by that title, aside from all other evidence than such possession and holding. Whatever diversities may exist in the decisions made elsewhere, this is binding on me, sitting in this court. I do not understand that the supreme court of Rhode Island, in Harris v. Arnold, 1 R. I. 125, have decided otherwise. It is there held that

possession is not, under all circumstances, conclusive evidence of notice. So I understand the law to be. See Jones v. Smith, 1 Hare, 43, 1 Phil. Ch. 244. Knowledge of possession by a third person may be accompanied by such circumstances, as, taken all together, do not evince what Mr. Vice Chancellor Wigram terms a fraudulent turning away from a knowledge of the facts which the res gestae would suggest to a prudent mind. Each case must be examined by the light of all the surrounding circumstances, which have a tendency either to prompt or check those inquiries to which it is the natural effect of notorious adverse possession to give rise.

These surrounding circumstances in this are, that Simon Whipple, having made the deed in question in March, 1826, those under whom the complainants claim built three large cotton mills in the years 1831, 1832, and 1833, and at the close of the latter year began to operate them by means of the water diverted from the river, under the titles which they assert in this suit, including that granted by Simon Whipple to Wilbur Kelly. This diversion and use were by means of permanent works, visible to the eye, and visibly necessary to the operation of this large and costly establishment. Under the reservation made in the deed in question, of certain waste water to be drawn through the described culverts for purposes of irrigation, Simon Whipple, during his lifetime, and his heirs after his decease, continued to make that restricted use of the water. This state of things continued until Mrs. Simmons, one of the heirs of Simon Whipple, conveyed to Charles Moies, by deed, dated March 12, 1849. certain lands inherited from Simon Whipple, together with the water rights now in controversy; and on the 26th day of September following, Charles Moies conveyed the same to his brother, the present respondent. Both Charles Moies and the respondent were well acquainted with the actual state of the premises, and knew at the time their respective deeds were made that the complainants were, and for some years had been, actually diverting the water, and using it at the Lonsdale Mills; and the respondent had actual knowledge that the water rights described in his deed were the subject of disput between Simmons and the complainant, and that counsel had been retained in expectation of a controversy concerning them. The lands conveyed by Simmons and wife have never been in the actual possession of either of the grantees, but of Simmons. Charles Moies does not appear to have paid anything for his deed. He gave back a mortgage for the amount of the consideration mentioned in the deed to him. The respondent answers that he paid his brother the one thousand dollars mentioned as the consideration of the deed to him about three years after the deed was executed, without interest. Whether Simmons has ever paid any rent for the lands, or to whom, does not appear. He has acted as agent and counsel in managing this suit. These special circumstances are not of a character to rebut the presumption of notice which arises from an adverse possession. On the contrary, when we consider that the deed from Whipple to Kelly, though not acknowledged, was actually spread on the public records, the facts, in my judgment, show that if the transaction between Simmons and Charles Moies, and that between the latter and the respondent, was an actual and not a colorable sale, the purchaser knew enough to send him to those records; and if he did not go there, he purposely turned away from a knowledge of the existence of that deed, and voluntarily kept himself ignorant of it, that he might enter with a better prospect of success upon the litigation which he knew he had purchased. I hold both Charles Moies and the respondent chargeable with notice of the deed from Whipple to Wilbur, and consequently, that it is valid and effectual, in equity. as against the respondent. It remains to consider the legal effect of the deed.

It is argued, that when viewed by the light of the surrounding circumstances, in and upon which the deed was to operate, its true construction is, and the intention of the parties was, to grant the water only for canal, and not for mill purposes. But it is difficult to perceive how any ambiguity, calling for a construction, can be raised on the words of this deed, which expressly conveys the right to use the water, when diverted. "for any purpose whatever." To draw from extraneous facts a restriction of the use to canal purposes, would be, not to construe but to contradict the deed.

It is further insisted, that whatever may have been the intention of the parties, the deed cannot operate, in point of law, to grant to Kelly a right to use the water for any but canal purposes. 1. Because Kelly was acting as agent or trustee of the canal corporation, which was not authorized to acquire water for mill purposes. 2. Because the canal corporation could not lawfully permit this section of its canal to be used for a conduit to conduct water to mills. 3. Because Kelly did not then own any land, to which this water right could be or was annexed, as an appurtenance, by the grant. I do not think either of these positions sufficient to restrict the legal operation of this deed to the use of the water for canal purposes. Kelly appears to have acted, not only as the trustee of the canal corporation, but also in behalf of himself and certain associates who desired to acquire mill sites. It was competent for him to purchase property and rights which were in part available for canal and in part for mill purposes; and it rested between himself and the canal corporation to distribute what was thus acquired, between them,

according to their respective wants. Third persons had no power to interpose between them. I cannot agree that it was unlawful for the canal corporation to allow Kelly to draw water for mill purposes through the canal. So long as such use was no interruption to the public use of the canal, and infringed on no private right, it was competent for the corporation to permit this incidental use. See Rundell v. Delaware & R. Canal Co., 14 How. [55 U. S.] 93. By their agreement with Kelly of the 16th September, 1826, this right was granted in consideration of covenants on his part, which amounted to a valuable consideration, directly subserving the public use. I perceive no legal objection to the arrangement. It is true Kelly had not acquired this right when the grant from Whipple was made; nor did he then own any land upon which he could use the water to be drawn through the canal. But I know of no rule of the common law which prohibits grants of the incorporeal right to divert water from being made in gross. If I have a spring I may sell the right to take water from it by pipes to one who does not own the land across which the pipes are to be carried, and I may either restrict the use to a particular house or not, as I please. It is true the grantee cannot make the grant useful without acquiring from the owner of the intermediate land the right to lay pipes therein, nor can he use the water in a house until he obtains the right to possess that house. But these may be acquired afterwards. Incorporeal rights may be inseparably annexed to a particular messuage, or tract of land, by the grant which creates them, and makes them incapable of separate existence. But they may also be granted in gross, and afterwards for purposes of enjoyment be annexed to a messuage or land, and again severed therefrom by a conveyance of the messuage or land, without the right, or a conveyance of the right without the land. Com. Dig. tit. "Appendant and Appurtenant," D; 2 Bl. Comm. (Chitty's Ed.) 19, 22, 34, 39; Ashley v. Pease, 18 Pick. 274; Cocheco Manuf'g Co. v. Whittier, 10 N. H. 305. And even if the common law were otherwise, as a grant is but a contract executed, if the grant could not take effect as such, still if it were acted on by the grantee, and expensive works erected, which were dependent on the enjoyment of what was bargained for, a court of equity would protect the grantee from an assertion of his legal title by the grantor.

It is further objected that the complainants have not acquired Kelly's title, first, because the deed from him to Brown and others bears date before the deed from Whipple to Kelly; and secondly, because Kelly conveys only the water rights he acquired "by virtue of agreement with Simon Whipple, the Blackstone Canal Company, and others"; and there is no agreement with Simon Whipple in evidence. But it is conceded that the deed from Kelly to Brown and others was antedated, and a deed speaks from the time of its delivery. U. S. v. Le Baron, 19 How. [60 U. S.] 73. And though his deed speaks of acquiring the rights from Whipple by agreement, yet, as Chief Justice Marshal says, in Fletcher v. Peck, 6 Cranch [10 U. S.] 87, a grant made in pursuance of a contract is an executed contract. Strictly speaking, therefore, there was no impropriety in referring to this grant as an agreement, for it was an agreement executed. Considering that it was the only agreement to which it could have been intended to refer, and that Brown and others, the grantees of Kelly, and their successors in the title, had acted under it for nearly twenty years when the respondent brought his action at law, and neither Kelly, nor any one representing him has ever questioned the complainant's title, I cannot say that the words "agreement with Simon Whipple," fail sufficiently to refer to and identify the rights he conveyed to Kelly.

It is also argued that if the deed from Whipple to Kelly was operative, it conveyed a legal title, and the complainants may have the benefit thereof in defending the action at law, and so there is no ground for the action of a court of equity. But there is no doubt of the jurisdiction of a court of equity to restrain the grantee by a registered deed from setting it up against a prior grantee by an unregistered deed, and to proceed to adjust the rights of the parties upon the footing of what equity deems the true title. Some courts of law in this country, though not in England, have exercised a similar jurisdiction. Robinson v. Allsop, 5 Barn. & Ald. 142; 1 Story, Eq. Jur. § 397. But this does not divest a court of equity of its powers to give relief.

The very elaborate and able arguments of the counsel in this case have discussed many questions and traversed much ground upon which I have not found it needful to pass. The result at which I have arrived is, that upon the deeds of conveyance, including that from Simon Whipple to Wilbur Kelly, the complainants have made good their title as against the respondent, to divert the water of the Blackstone river, saving only what was reserved for purposes of irrigation in the last mentioned deed; and consequently are entitled to an injunction to stop the prosecution of the suit at law, and protect their incorporeal right from disturbance. Let a decree be drawn up to this effect, and for the costs.

Incorporeal Rights in Water—Transfer of Water Rights. See Goodrich v. Burbank, 12 Allen, 462; Amidon v. Harris, 113 Mass. 64,—citing above case.

[NOTE. The case was subsequently heard upon exceptions to master's report, upon which hearing the court explained and construed the decree above. The exceptions were partially sustained. Case No. 8,497.]